# Ligat *versus* Commonwealth.

1. Where a lot of ground required for a lock-keeper was taken by the supervisor of the canal by direction of the canal commissioners, under the Act of 8th April, 1833, and a building erected thereon, the former owner has no right, either before the building is completed or afterwards, to take possession of the house forcibly or by stealth, for the purpose of testing the legality of its appropriation to public use.

2. Before taking ground for such a purpose, a resolution of the board of commissioners should be adopted indicating their intention to take the land, and describing its bounds and the extent of interest or estate required; but if, on the trial of an ejectment, the former owner permits secondary evidence of the appropriation of the land to be given, it is too late to raise, for the first time in this Court, the objection that no such resolution was produced on the trial.

3. If a lot of ground on which a lock-house has been erected proves to be inconvenient for its appropriate uses, the canal commissioners may take possession of other ground for the purpose of erecting a new lock-house. Their power is not exhausted by the first appropriation.

4. The assessment of damages by the canal commissioners for ground taken by their order for a lock-house *is not unconstitutional.* A sovereign state is not liable to an action at law against her consent, and the right of trial *by jury* has, therefore, no existence in such a case. The mode of assessment rests with the Legislature, and this Court has no authority to question the justice of the decree of a tribunal empowered to make a final adjudication on the subject.

ERROR to the Common Pleas of *Indiana county.*

This was an action of ejectment in favor of The Commonwealth *v.* William Ligat, to recover the possession of a lock-house and lot of ground.

In the month of May, 1833, the board of canal commissioners, then in office, purchased from *S. Steele* two lots of ground, in the town of Centreville, upon which a house and other buildings had been erected. These lots of ground were adjacent to Canal Lock, No. 18, and have ever since been occupied and used as a dwelling for the persons who have been appointed to attend to that lock.

It was alleged in this case, on the part of the Commonwealth, that the canal commissioners, in the month of November, 1850,

[Ligat *v.* Commonwealth.]

directed the supervisor of the upper section of the western division of the Pennsylvania Canal, to change the location of the lock-house; to lay out a lot for a lock-house on the upper side of the canal, on land belonging to *William Ligat*, the defendant, and to build a lock-house upon the lot thus appropriated.

The supervisor, acting under these instructions, proceeded to stake off a lot, and to erect a house. Ligat objected to his doing so, and the supervisor offered him forty dollars as a full compensation. Ligat refused to receive it. It did not appear that any resolution of the canal commissioners was adopted as to this particular case.

When the new house was under roof, and had a floor in it, but before it was finished, the defendant entered into the house for the purpose of retaining the possession, until he should be legally dispossessed. The present action was brought to recover the possession.

BURRELL, P. J., instructed the jury to find for the plaintiff.

It was assigned for error, 1. That the Court erred in instructing the jury that the canal commissioners had authority to alter the site of a lock-house built in 1833, and used and occupied as such from that time to the year 1850, at which time the alteration was made.

2. The Court erred in instructing the jury that the canal commissioners had jurisdiction to assess the damages which the defendant had sustained by the occupancy of his land; and also in instructing the jury that an assessment of damages by them would be constitutional and obligatory on defendant below.

3. In instructing the jury to find a verdict for plaintiff.

*White*, with whom was *Coffey*, for plaintiff in error.—The charge and direction of the Court were alleged to be erroneous: 1. Because, if there was any authority to change the location of the lock-house at lock No. 18, without legislative action, the canal commissioners could not devolve this duty upon the supervisor, and appropriate the land of any citizen, without a regular resolution of the board, reduced to writing, and entered in the records of their proceedings.

2. Because, by the establishment of the lock-house at the place designated, in 1833, the power of selection was exhausted, and the canal commissioners had no authority to change it without an act of the Legislature conferring such specific authority.

3. Because, even if such legislative action is not requisite, there is no existing authority in the canal commissioners, inasmuch as

[Ligat *v.* Commonwealth.]

there is no legal mode or manner prescribed for the assessment of the injury sustained by the appropriation of land belonging to a citizen for a lock-house, the defendant believing and contending that the Legislature cannot confer the power of assessing damages upon the same individuals who would be authorized to appropriate.

By the Act of 2d July, 1842, sect. 3, the board of appraisers was abolished, and the assessment of damages, to be made by the canal commissioners, was to be final and conclusive. It was suggested that the Legislature scarcely supposed that the commissioners possessed power to revise what had been done by their predecessors, or this power would probably not have been conferred. It was alleged that the lot was worth more than double the sum which was offered by the supervisor.

It was contended that it was unconstitutional to vest the right of assessing damages in the same persons who were authorized to take the property. It is *unjust* that one should be a judge in his own cause, and the canal commissioners are the agents of the Commonwealth. The 10th section of the ninth article of the Constitution of Pennsylvania provides that no man's property shall be taken and applied to public use without the consent of his representatives, and without just compensation being made. The principle of natural justice has been repeatedly recognised by Courts of justice : *Baldwin, C. C. R.* 226, ad *finem,* & 207 ; 3 *John. Ch.* 665, Gardner *v.* Village of Newburgh ; 17 *Johns. R.* 215, People *v.* Platt ; 7 *Pick.* 500, Charles R. Bridge *v.* Warren Bridge ; Harrisburg *v.* Crangle, 3 *W. & Ser.* 460 ; and the principle is broadly stated in Pittsburgh *v.* Scott, 1 *Penn. S. Rep.* 314, that if no provision is made for compensation, the act is unconstitutional and void.

*Foster* and *Drum,* for the Commonwealth.—The presumption existed that a resolution of the board of canal commissioners was made and entered of record. But the law does not require that such a resolution be entered on record.

2. The power was not exhausted by the first selection of ground for a lock-house. The Act of 1833 does not limit the power to its *first* exercise.

Both lots were not taken *from the same person.*

The constitutionality of the Act of 1842 is objected to, 1. Because no mode has been provided for the recovery of damages by the person whose property has been invaded. 2. Because, if there be a mode provided, it is inadequate and inequitable.

That section of the Constitution which provides that just compensation shall be made to persons whose property shall be taken for public use, has received a settled construction. In the case of Pittsburgh *v.* Scott, 1 *Barr* 309, the Court say, that "when pri-

[Ligat v. Commonwealth.]

vate property is taken for public use, it is not necessary that the compensation to the owner, required by the Constitution, should be actually ascertained and paid before the property is appropriated; but it is sufficient if an adequate remedy is provided by which he can obtain compensation without any unreasonable delay."

"The damages may be assessed in any equitable and fair mode to be provided by law, without the intervention of *a jury:*" 2 *Kent Comm.* n., 336, and cases there cited.

If the provisions of the Act of 1842, abolishing the board of appraisers, and making the assessment of damages by the canal commissioners conclusive, be unconstitutional, then the 8th section of the Act of 9th April, 1827, would be in force, and this provides a remedy for any person aggrieved, by reason of the canal interfering in any manner with his rights of property, authorizing him to apply to the Court of Quarter Sessions. The remedy provided by that act is neither inadequate nor unreasonable.

*Banks*, for plaintiff in error.

The opinion of the Court was delivered by

LEWIS, J.—Where a lot of ground is required for a lock-keeper, and the supervisor of the canal, by direction of the canal commissioners, or a majority of them, surveys and lays off the necessary quantity of land for the purpose, not exceeding one-half an acre, and takes possession and erects a building thereon for a lock-house, the former owner of the land has no right, either before the building is finished, or afterwards, to take possession of the house by force, or by stealth, for the purpose of testing the regularity of the appropriation to public use. There is always a presumption in favor of the acts of public officers and agents, under oath, which forbids an individual from making himself a judge in his own cause, and turning them out of peaceable possession of property taken and occupied for public use. This possession, and the legal presumption in its favor, like a descent cast, tolls the entry of the former owner, and turns him around to his action. An entry upon the possession taken by the agents of the state, might seriously obstruct them in the discharge of their duties in the management of the public works, and thus produce irreparable mischief, as well as tend to a breach of the public peace. The law furnishes an ample remedy, by action, for any unauthorized seizure of the private property of the citizen.

On the trial of an ejectment brought by the Commonwealth to regain the possession, under such circumstances, the person in possession cannot defend himself upon the ground that the canal commissioners gave no written direction to the supervisor, by

[Ligat *v.* Commonwealth.]

resolution of the board, to survey and lay off the ground for the public use.

It is the duty of the canal commissioners, in an affair so important as appropriating the real estate of the citizen to the public use, for permanent erections thereon, to indicate their determination by a resolution, duly adopted and entered on their journals, "describing and ascertaining the bounds of the land, and the quality and duration of the interest and estate in the same, which may be required for the use of the state:" 8th section, Act 25th February, 1826. This is necessary in order that the state may have record evidence of her title, to enable her agents, from time to time, as they succeed each other, to know and protect her rights. But these proceedings are required more for the protection of the public than for the benefit of the individual whose property has been taken; and if, on the trial of an ejectment, the defendant permits secondary evidence of the appropriation to be given, without objection, and puts his defence entirely upon other grounds, it is too late to raise the objection for the first time, on a writ of error, that a copy of the resolution of the board was not produced on the trial.

If a lot of ground, on which a lock-house has been erected, should be deemed no longer suitable or convenient for its appropriate uses, the canal commissioners have power to take possession of other ground for the purpose of erecting a new lock-house. Their power is not exhausted by the first appropriation. Errors of location in matters of that kind, which are but incidents to the main work, may be corrected without special application to the Legislature.

By the repeal of the act allowing an appeal from the decision of the canal commissioners to the board of appraisers, the former are constituted the final tribunal for the assessment of compensation to the owner. It is their duty to assess and offer a just compensation for the property taken. This, it is alleged, has been done in the case before us; but it is objected that their assessment is not constitutional. The assessment by the canal commissioners is as fully authorized by the constitution as an assessment by any other tribunal. A sovereign state is not liable to an action at law, against her consent; and the right of trial by jury has, therefore, no existence in such a case. The mode of assessment rests with the Legislature; and the common law Courts have no authority to question the justice of decrees made by tribunals clothed with power to make final adjudications on the subject.

The errors assigned are unsustained, and the judgment below must be affirmed.

Judgment affirmed.